JOHN N. TRUE, ZIBA SPRAGUE AND ALDEN SPEAR *v. The Estate of* JOHN W. MORRILL.

*Appeal. Homestead.*

An appeal lies from the decision of the probate court setting out a homestead to the widow of a deceased person.

A piece of land which has a dwelling house upon it, occupied by a tenant, but upon which the owner never resided, cannot be treated as his homestead within the the meaning of the statute, (Comp. Stat. ch. 65 § 1 & 4,) though he had no other dwelling house, and may have contemplated living upon the premises at a future time.

Nor can separate pieces of woodland from which the owner was accustomed to obtain wood for his own use, or a piece of land occupied only by a shop, or a pew in the meeting house, be regarded as a homestead, or a part of it, within the meaning of said statute.

APPEAL from a decree of the probate court setting out to the widow of the intestate a homestead. In the county court, January Term, 1856,—UNDERWOOD, J., presiding,—the appellee moved to dismiss the appeal, on the ground that the county court had no appellate jurisdiction of the subject matter. The motion was overruled, and the appellees excepted.

The parties then agreed upon a statement of the facts in the case, upon which the county court reversed the decree of the probate court setting out the homestead, to which the appellees also excepted.

The facts agreed upon were substantially as follows.   John W. Morrill deceased in September, 1854, leaving a widow but no children,—and leaving property, real and personal, to the amount of about five thousand dollars after the payment of all debts and charges of settling the estate, principally in notes and other personal property, there being but about five hundred dollars worth of real estate.   The real estate which was set out to the widow, as the homestead of the deceased, consisted of four small detached pieces of land, and a pew in the meeting house.

One piece contained ten or twelve acres of land on which was a good barn and an old house, occupied by a tenant at the time of the decease of the intestate, and upon which the deceased never resided ; but, previous to his decease, he had contemplated building a house there for his own occupancy, and had made some preparations therefor, by way of procuring and furnishing building materials,—and had attempted to negotiate for the building of the same. One other piece contained about twenty-two acres of wood and timber land, lying about fifty rods from the first mentioned piece, which the deceased had occupied by taking from it timber and firewood for his own use ; another piece of wood land lay about one mile from the first mentioned lot, and contained about two acres ; one other piece of two or, three acres lay about one hundred rods from the first described lot, and on it there was a shop in which the deceased had stored some part of his household furniture, and in which he had some few tools, and had occasionally done some work.   The pew was in the Union meeting house, and was occupied by the deceased and his family.

The intestate, at the time of his decease, was not keeping house, but was hiring his board in the family of one John Richardson, within some fifty rods of the first mentioned piece of land, and had so boarded for about six months previous to his death.   He had, for a long time, owned and occupied a farm in the vicinity of these pieces of land, but a little more than two years previous to his decease he sold his farm, but continued to occupy a part of the house upon it up to the time when he went to board with Richardson.

*Peck & Colby* for the appellees.

This case is not appealable, nor is it an adversary proceeding.

44

The statute casts the title by descent on the widow and children; and the probate court can neither give or deny such title. They may, "if *necessary*, appoint three commissioners to set out to such widow such homestead." Comp. Stat. chap. 65, § 4.

The object of this statute is to effect a *severance* merely. The homestead exists independent of the probate court, and a decree setting out lands not properly homestead will have no effect upon the owners of the lands. No provision is made for an appeal by law, and none for proceedings on an appeal in the county court. If an appeal can be had by the heirs, it can be had by the widow. Suppose the probate court refuse to appoint commissioners to set out a homestead, not thinking it "*necessary*." Would an appeal lie? Suppose said court refuse to to decree a homestead, could she appeal? and what proceeding would be had in county court?

*W. Hebard* for the appellants.

The opinion of the court was delivered by

BENNETT, J. It has been settled by this court, in a case in Rutland county, that causes of this description come within the general provisions of the probate law allowing appeals from the decisions of the court of probate.

The more important inquiry in the case is in regard to the character of the property set out to the widow. Was it of the character, and so occupied by the husband at the time of his decease, as to bring the case within the provisions of the first section of the homestead act? This section defines a homestead as consisting "of a dwelling house, out-buildings, and lands appurtenant, occupied as a homestead by a housekeeper or the head of a family," and the fourth section provides that upon the death of such housekeeper or head of a family, leaving a widow, his homestead shall pass to his widow and children, if any there be, in due course of descent. The object of the law creating a homestead which should not be subject to the debts of the husband, is of a humane character, and should be held to apply fairly to all such cases as are within the equity and spirit of the act, but, beyond this, we should not go. It seems the deceased was a man in good circumstances, leaving an estate of some five thousand dollars above all his debts, being mostly in

True et als. *v.* Estate of Morrill.

notes and personal property. The farm which the deceased had for a long time owned and occupied, in the vicinity of the pieces of land set out to the widow, had been sold more than two years before his death, and, at the time of his death, he was not keeping house, but had been boarding, for some six months, in the family of a Mr. Richardson, some little distance from any of the land set out to the widow. Although the case finds that after the sale of the farm the deceased continued to live in a part of the house up to the time he and his family went to board with Richardson, yet his occupancy must have been in the character of a tenant during that time. This farm, no doubt, at the time of its sale, was *occupied by the deceased as a homestead*, but we think this cannot be said of any of the pieces of land set out to the widow. The first piece, consisting of some ten or twelve acres, had been occupied by a tenant, and upon which the deceased had never resided. Where the statute speaks of a housekeeper, or the head of a family, occupying a place *as a homestead*, it no doubt refers to a personal occupation, and not by a tenant. The woodland, though it may have been occupied by the deceased, previous to his death, for the purpose of taking timber and fire-wood from it for his own use, yet it would be an abuse of language to call it his *homestead*. So it may be said of the small piece upon which there was a shop, in which the deceased had stored some of his furniture, and in which he had some tools, and occasionnally did some work. There is no pretence that he or his family occupied it in any other way. It was no *homestead*, not any more so than the pew in the meeting house occupied by the deceased and his family when they went to church.

We think, then, the judgment of the county court, reversing the decree of the court of probate should be affirmed with costs.