**In re Wendall I. MACLEOD, Debtor.**

No. 02–11237.

United States Bankruptcy Court,
D. Maine.

July 2, 2003.

Peter C. Fessenden, Chapter 13 Trustee.

Keith R. Varner, Esq., Lipman & Katz, P.A., Augusta, ME, for Diane Hodsdon.

William L. Dawson, Jr., Esq., Law Offices of William L. Dawson, Jr., Belfast, ME, for Wendell I. MacLeod.

## MEMORANDUM OF DECISION

LOUIS H. KORNREICH, Bankruptcy Judge.

### INTRODUCTION

This Chapter 13 case was commenced on July 7, 2002. On March 4, 2003, an evidentiary hearing was held on the objection of the Chapter 13 trustee ("Trustee") to the Debtor's claim of a residence exemption in a mobile home park and on the Debtor's objection to the claim of his ex-wife, Diane Hodsdon ("Diane"). For the reasons which follow, the Trustee's objection is sustained and Diane's claim is allowed in full. This memorandum of decision contains my findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052(a).

### FACTS

The Trustee and the Debtor submitted a joint stipulation of facts on the Debtor's claim of exemption prior to trial.[1] Other facts were adduced at trial. The Debtor, aged 65, has been disabled for many years. His sole source of income, other than from Social Security, is from the operation of a mobile home park on approximately 19 acres of land located in Belfast, Maine that he owns jointly with Diane. This single, undivided parcel of real estate contains spaces for twenty mobile home units. These spaces are referred to by the parties as "lots." The Debtor resides in a double wide mobile home on one of the lots; another lot is occupied by his adult son; and a third is used for storage. At the time of trial, sixteen lots were rented to tenants pursuant to written rental agreements. The park also has roads and grassy areas which are maintained by the Debtor.

The Debtor has had an ownership interest in the park since the early 1970's, and has resided there for the last 16 or 17 years. The Debtor has operated the mobile home park continuously since 1974 and this business use has been reflected consistently in his tax returns.

The Debtor and Diane were married in 1963. They were divorced in 1987. Among other things, their divorce decree provides that he is to pay Diane $200.00 per month for as long as he operates the

---

1. Stipulation of Uncontested Facts and Issues dated December 5, 2002.

mobile home park.[2] If and when operations cease, the property is to be sold and the proceeds are to be shared equally by the Debtor and Diane. Until then, all expenses of operation are to be paid by the Debtor. The Debtor has never made a monthly payment to Diane under the state court decree.

On November 28, 1995, the Debtor filed his first petition for relief under Chapter 13 (Case Number 95–10936). Diane filed a claim for debts due under the divorce decree. As in the present case, the trustee in that case objected to the Debtor's assertion of a residence exemption; although, unlike the present objection, the first one was confined to the value of the property and did not address its business use.[3] That objection was not pursued because that case ended with the payment of a 100% dividend to all unsecured creditors. Diane received full satisfaction of her claim for the value of monthly payments due under the divorce decree through the commencement date of the first case. A discharge was entered in the first case on October 16, 2000.

Diane's present claim of $16,000.00 is for all unpaid monthly obligations due under the decree between the commencement dates of the two Chapter 13 cases.

## DISCUSSION

I will first address the Trustee's objection to the Debtor's residence exemption. The Debtor contends that the entire mobile home park qualifies for the Maine residence exemption. The Trustee counters that the exemption should be limited to that portion of the property which the Debtor uses as his residence.

■■■ Pursuant to Fed. R. Bankr.P. 4003(c), the objecting party has the burden of proving that a debtor did not properly claim the residence exemption. Once the objecting party rebuts "the prima facie effect of the claim of exemption", the burden of production shifts to the debtor. *In re Cole*, 185 B.R. 95, 96 (Bankr.D.Me.1995)(quoting *In re Hollar*, 79 B.R. 294, 295–96 (Bankr.S.D.Ohio 1987)).

■■■ Maine, which has opted out of the federal exemptions,[4] provides a residence exemption for "real or personal property that the debtor ... uses as a residence...." 14 M.R.S.A. § 4422(1)(A). The determinative provision in Maine's

2. The applicable part of the divorce decree provides as follows:

This Court finds that the parties own marital real estate together with improvements thereon described in a deed from Wendell I. MacLeod to Wendell I. MacLeod and Dianne R. MacLeod dated January 11, 1980 recorded in the Waldo County Registry of Deeds in Book 774, Page 335. It is hereby ORDERED and ADJUDGED that said real estate is awarded equally to the parties with each party to hereafter hold an undivided one-half interest in the premises as tenants in common. It is further ORDERED and ADJUDGED that the Defendant, Wendell I. MacLeod may manage the mobile home park for so long as he desires or is physically able to do so. At such time as he can not or does not desire to manage the mobile home park it shall be sold and each party shall be entitled to one-half of the net proceeds of the sale. All income from the mobile home park is awarded to the Defendant with the exception of Two Hundred Dollars ($200.00) per month, which said sum the Defendant shall pay to the Plaintiff on a monthly basis, with the first payment to be made on or before December 7, 1987 and on the seventh day of each month thereafter. Defendant shall be solely responsible for the payment of all expenses for the mobile home park, including any indebtedness due on said property.

3. The same individual has served as trustee in both cases.

4. *See* 11 U.S.C. § 522(b); 14 M.R.S.A. § 4426.

residence exemption, as it applies to this Debtor, is the requirement that the property be used as a residence. Property will not be exempt unless it is actually or constructively occupied as a residence. *In re Grindal,* 30 B.R. 651, 653 (Bankr.D.Me.1983). An intention to use the property as a residence is the key. *In re Bennett,* 192 B.R. 584 (Bankr.D.Me.1996). Actual residency is not always necessary. Constructive occupancy may suffice if, after leaving a residence, a debtor demonstrates an intention to return. *Grindal,* 30 B.R. at 653. Constructive residency will also apply if a debtor demonstrates "a meaningful ability to occupy the property imminently or within a reasonable time." *Bennett,* 192 B.R. at 587–88.

■■■ The Debtor's use of his double wide mobile home as his residence is not in dispute. Therefore, I conclude that it is exempt personal property under the statute. 14 M.R.S.A. § 4422(1)(A). The quarrel is over the real estate. Other than the lot under the Debtor's double wide, there was no showing that any portion of the property, including the unoccupied areas, is used by him as a residence. Nor was there a showing of an intention by him to do so in the future. The evidence shows that the Debtor has treated all nineteen acres as a business asset for tax purposes, including the lot under his double wide; and significantly, he has made no claim that the unoccupied areas are used by him for recreation or any other quasi-residential purpose like a garden or habitat for domestic animals.

The Debtor relies upon the fact that he resides upon a portion of a single, undivided parcel. In his view, the residential character of the property is established by his occupancy of one mobile home lot.

Many bankruptcy courts have addressed the applicability of the residence exemption to property which is partially used as a residence. Most cases properly turn on the wording of the statute in question. *In re Trigonis,* 224 B.R. 152 (Bankr.D.Nev. 1998) is instructive. In that case the court distinguished between those exemption statutes which focus on the use of the property and those which allow the exemption to attach to property of a certain size or value despite mixed use. Since Nevada's statute focuses on size rather than use, the debtor was allowed to claim an entire four-unit apartment building exempt even though his residential use was limited to one unit.

Maine's homestead exemption is use oriented ("real or personal property that the debtor ... *uses* as a residence. . . ." 14 M.R.S.A. § 4422(1)(A)(emphasis added)), so the inquiry is whether and to what extent a debtor uses property as a residence. The size of the property does not matter as long as its value is within the statutory limit.[5] Residential use may extend also to contiguous property which is used for a complimentary activity, like family recreation. It may even extend to incidental business use, like a home office. But when, as in this instance, there is mixed use, and the primary use is commercial, the exemption will not attach to the entire holding. Business property is not exempt.

Other courts that have analyzed a debtor's use of property are in accord. *See In re Bell,* 252 B.R. 562 (Bankr.M.D.Fla.2000)(debtor's exemption disallowed for commercial structure adjacent to homestead); *In re Mirulla,* 163 B.R. 910 (Bankr.D.N.H.1994)(debtor allowed an exemption for the five rooms he occupied in a 32 room hotel); *In re Evans,*

**5.** Maine's exemption amount is $25,000, which increases to $60,000 if the debtor is either 60 years of age or older, or physically or mentally disabled.

51 B.R. 47 (Bankr.D.Vt.1985)(Where debtor owned property containing two houses on property which could not be subdivided, and rented the second house, the exemption was limited to the house occupied by debtor.); *cf. In re Robinson*, 75 B.R. 985 (Bankr.W.D.Mo.1987)(Debtor allowed to exempt building which served as his residence, but which also contained a "now deserted restaurant and the nearly quiescent bar" because "if the owner intends the structure to be his homestead and actually lives in it, then it can be his homestead, no matter what its form or appearance or original useage." *Id.* at 988, 989.).

It has been this Debtor's intention to treat his entire interest in the real estate as a business. Therefore, none of it, including the lot under his mobile home should be set aside as exempt property. However, because the Trustee has no objection to the exemption of the space under the Debtor's mobile home, that lot will be deemed exempt property. The rest of his interest in the land shall remain property of the estate. No partition of the mobile home park into separate exempt and non-exempt parcels will be necessary if the value of the property to be distributed under the Debtor's Chapter 13 plan includes the value, as of the effective date of the plan, of the non-exempt portion. *See* 11 U.S.C. § 1325(a)(4).

 The Debtor also argues that the Trustee is barred by judicial estoppel from objecting to the exemption on grounds of non-residential use in this case because he failed to raise that objection to the exemption of the same mobile home park in the first case. Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212

(1st Cir.1987). The doctrine "should be employed when a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction' is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id.* at 212 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3rd Cir.1953)).

 Judicial estoppel does not apply in this instance. There is no indication that the Trustee is playing fast and loose with the courts, or engaging in self-contradiction. More importantly, prosecution of the Trustee's objection to exemption in the first Chapter 13 case would have been pointless, because the Debtor's Chapter 13 plan in that case provided for the distribution of a 100% dividend to all creditors.

 I turn now to the issue of Diane's claim. Her unsecured, non-priority claim in the amount of $16,000.00 represents the sum of monthly payments due under the divorce decree from the date of filing of the first case in 1995 to the filing of present Chapter 13 case. The Debtor's objection to allowance is based upon his discharge in the earlier case. Diane's response is that each monthly payment is a separate obligation under the divorce decree. As such, the failed payments which make up her present claim did not arise until after the filing of the first case and could not have been discharged in that case.

The divorce decree did not make a lump sum award to Diane, payable in monthly installments. Rather, it imposed a series of independent monthly obligations upon the Debtor for as long he chooses to operate the mobile home park. Each month of operation gives Diane a new right to payment and imposes a new duty upon the Debtor. Each monthly obligation is a new claim within the meaning of 11 U.S.C.

§ 101(5)(A)("Claim means ... right to payment....."). Diane's present claim (which is really 80 separate claims) did not exist at the time of the first discharge and was not affected by it. Her present claim in the amount of $16,000.00 shall be allowed as a general unsecured claim in that amount. Post-petition monthly payments due under the divorce decree shall be paid as an administrative expense claim in this case. Enforcement of the administrative expense claim may be in this Court or the state court.

An appropriate order will issue.